**IN THE COURT OF APPEALS OF IOWA**

No. 21-1611
Filed January 11, 2023

**STATE OF IOWA,**
       Plaintiff-Appellee,

**vs.**

**GREGORY CECIL HETTMANN,**
       Defendant-Appellant.
_____

       Appeal from the Iowa District Court for Polk County, David M. Porter, Judge.

       Gregory Hettmann appeals his conviction for third-degree sexual abuse.
**AFFIRMED.**

       John C. Heinicke of Kragnes & Associates, P.C., Des Moines, for appellant.

       Brenna Bird, Attorney General, and Timothy M. Hau, Assistant Attorney
General, for appellee.

       Considered by Tabor, P.J., and Schumacher and Chicchelly, JJ.

**CHICCHELLY, Judge.**

Gregory Hettmann appeals his conviction for third-degree sexual abuse, challenging the sufficiency of the evidence. We review claims of insufficient evidence for correction of errors at law. *State v. Buman*, 955 N.W.2d 215, 219 (Iowa 2021). In doing so, we view the evidence and any inferences drawn from it in the light most favorable to the State and affirm if substantial evidence supports the verdict. *See id.* Because there is substantial evidence showing Hettmann committed third-degree sexual abuse, we affirm.

The State charged Hettmann with third-degree sexual abuse for performing a sex act on K.H. while she was suffering from a mental defect or incapacity that precluded her from giving consent. *See* Iowa Code § 709.4(1)(b)(1) (2018). The parties agree that Hettmann performed a sex act on K.H. in December 2018; he admits that he performed oral sex and attempted to penetrate K.H.'s vagina with his fingers but stopped when she "freaked out." The question is whether K.H. was mentally incapacitated. Chapter 709 defines mentally incapacitated as "temporarily incapable of apprising or controlling the person's own conduct due to the influence of a narcotic, anesthetic, or intoxicating substance." *Id.* at § 709.1A(1).

Hettmann's conviction arises from events that occurred after K.H. went to Hettmann's apartment in December 2018. K.H. arrived at around 7:00 p.m. with a bottle of vodka. The two shared the bottle, drinking in large gulps as they passed it back and forth. But while talking at the start of the night, K.H. made her intentions clear:

Q. . . . What did you talk to him about? A. We caught up and he asked questions about my life and stuff, just small talk since we hadn't known each other. Then, I did tell him before I started drinking that I wanted it to be known that I don't want to go any further than kissing, that if that were the case, we could do that sober.

Q. When you say, "If that were the case, we could do that sober," do you mean anything beyond kissing? A. Anything beyond kissing. I didn't want to cross that boundary.

Q. Why not? A. I don't like crossing boundaries like that drunk. I like to make sober decisions.

Q. Did Mr. Hettmann say anything to you after you gave him those boundaries? A. He agreed.

Q. Did he verbally agree or just nod his head or what do you remember? A. I believe he verbally agreed, but I'm not for certain.

Q. Was he looking at you when you were having that conversation about your boundaries? A. Yes.

Q. Was there anybody else in the room talking to him that would have been distracting him? A. No.

Q. From what you remember, was it very clear what you had indicated your boundaries were? A. Yes.

K.H. also explained that she had post-traumatic stress disorder (PTSD). Although she recalled kissing Hettmann on the lips, she did not remember permitting him to perform oral sex or penetrate her with his fingers. K.H. was adamant that she would not have:

Q. Do you believe you would have given him permission to do that? A. No.

Q. Why not? A. Because I have extremely bad PTSD, and I do not enjoy that.

Q. . . . When you're talking PTSD, is that a trigger with vaginal contact or what type of contact? A. I don't like penetration.

Q. Are we talking vaginal penetration? A. Yes.

K.H. cannot recall anything from about 10:00 p.m. until she was awakened by the sound of a fire alarm around 4:00 a.m. She was not wearing pants. When she asked Hettmann, he said that she was hot and wanted to remove them. K.H. accepted this explanation, and she returned to sleep in Hettmann's bedroom after the fire alarm ended. K.H. did not become alarmed until she discovered her

underwear was on inside out and sideways later that morning. She tried to contact Hettmann to find out why, but he had blocked her on his Facebook account. When K.H. reached Hettmann on a different account, he told her that she drank most of the alcohol and passed out by 10 p.m.

According to Hettmann, K.H. passed out by 10:00 p.m. He told K.H. that he performed oral sex on her when she was awake and stopped after attempting to penetrate her. He claimed that his penis remained in his pants during the act but admitted to masturbating in the bathroom afterward. Testing on the underwear K.H. wore that night showed Hettmann's seminal fluid and spermatozoa on it.

On appeal, Hettmann notes the trial court found it was a "close call" on whether the State provided sufficient proof of the elements of the crime. He argues the evidence does not show that K.H. was so intoxicated that she could not control her own conduct.[1] We disagree. K.H. consistently maintained that she could not remember anything that happened after 10 p.m. Hettmann admits that K.H. was so intoxicated that she passed out and he consulted his roommates about what to do. He also encouraged her to force herself to vomit, and she did so several times.

Hettmann cites *State v. King*, No. 17-0063, 2018 WL 1865107, at *7 (Iowa Ct. App. Apr. 18, 2018), in support of his claim that K.H. was not mentally incapacitated. The defendant in *King* appealed a conviction for first-degree burglary, which was based on an act of sexual abuse against M.A. 2018 WL 1865107, at *5; *see also* Iowa Code § 713.3(1)(d) (stating first-degree burglary

---

[1] The acts at issue occurred during a period during which K.H. was drinking excessively. She admits drinking to the point of intoxication on about twenty-four out of thirty evenings. K.H. weighed about one-hundred pounds, and she testified that she had eaten nothing since lunch that day.

occurs when a person commits sexual abuse while burglarizing an occupied structure). The question was whether sufficient evidence showed the defendant entered with specific intent to commit third-degree sexual abuse on a person who was mentally incapacitated. *King*, 2018 WL 1865107, at *6-7. The court found there was not, noting there was no evidence that the complaining witness "was sick or intoxicated to the point of helplessness." *Id.* The court further noted, "She did not vomit, slur her words, or lose consciousness. Most important, in her own words, M.A. was clearheaded." The facts before us differ significantly. And, unlike in *King*, Hettmann's intent is irrelevant to our inquiry. *See State v. Kelso-Christy*, 911 N.W.2d 663, 666 (Iowa 2018) ("The focal point of the crime of sexual abuse is consent. This critical element does not inquire into the mind of the defendant to create a specific-intent crime, but turns on the intentions and mental state of the victim." (internal citation omitted)); *State v. Christensen*, 414 N.W.2d 843, 845 (Iowa Ct. App. 1987) (holding "a defendant's awareness of a putative sexual abuse victim's lack of consent is not an element of third-degree sexual abuse").

Substantial evidence shows K.H. could not give meaningful consent at the time Hettmann performed the sex act. *See State v. Meyers*, 799 N.W.2d 132, 146 (Iowa 2011) (noting that "meaningful consent is the important inquiry"). In determining whether meaningful consent was given, we "take[] into account circumstances indicating any overreaching by the accused, together with circumstances indicating any lack of consent by the other person." *Id.* K.H. testified that while she was sober, she informed Hettmann that she did not want to go farther than kissing. K.H. explained to Hettmann, as well as the court, that she objected to doing more while intoxicated because of past experiences, which have

caused PTSD. As the trial court noted, her refusal to submit to a speculum exam during the examination for sexual assault was "more proof that she would be uncomfortable with vaginal penetration." K.H. was consistent in stating that she could not recall much of what happened once she began drinking and remembered nothing that occurred between 10:00 p.m. and 4:00 a.m. The evidence suggests the sex act occurred shortly before K.H. passed out at 10:00 p.m., at which point she was too intoxicated to apprise or control her conduct and thus unable to give meaningful consent.

Because substantial evidence supports Hettmann's conviction for third-degree sexual abuse, we affirm.

**AFFIRMED.**